## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

BEN GYADU,

     *Plaintiff*,

     v.

T. BAINER and THOMAS F. GAHAN in their
individual capacities, PAUL LAGASSE JR.,
VINCENT LAGASSE, and PAUL LAGASSE AND
VINCENT LAGASSE d/b/a LAGASSE
APARTMENT RENTALS d/b/a PROVIDENCE
MUTUAL INSURANCE COMPANY,

     *Defendants*.

No. 3:19-cv-01120

## RULING ON MOTIONS TO DISMISS

     This action arises from an eviction of Plaintiff Ben Gyadu from an apartment in
Waterbury, Connecticut.  Gyadu sues the clerk of the housing court, T. Bainer, the state marshal
who evicted him, Thomas F. Gahan, and his landords, Paul Lagasse Jr., Vincent Lagasse, and
Paul Lagasse and Vincent Lagasse d/b/a Lagasse Apartment Rentals d/b/a Providence Mutual
Insurance Company, alleging violations of his federal civil rights, breach of contract, and
violation of the Connecticut Unfair Trade Practices Act  Compl., ECF No. 42.  The defendants
have moved to dismiss under Rules 12(b)(1) and 12(b)(6), arguing that this Court lacks
jurisdiction over what they say amounts to an appeal of the state court eviction action and that, in
any event, Gyadu has failed to set forth cognizable claims.  ECF Nos. 45, 47, 48, 50.  For the
reasons set forth below, I agree with the defendants and grant their motions to dismiss.

## I.     BACKGROUND

The following facts are drawn from Gyadu's operative complaint as well as from pleadings and records from the underlying eviction action.[1]  These facts are accepted as true for the purpose of this ruling.

Plaintiff Ben Gyadu ("Gyadu") resides in Connecticut.  ECF No. 42 at 1.  Defendant T. Bainer ("Bainer") is a citizen of Connecticut and is employed as a clerk at the Superior Court of Waterbury, Housing Session.  *Id.*  Bainer was acting under color of state law.  *Id.*  Defendant Thomas F. Gahan ("Gahan") is a citizen of Connecticut and is employed as a Marshal for the State of Connecticut.  *Id.* at 2.  Gahan was acting under color of state law.  *Id.*  Defendant Paul Lagasse and Vincent Lagasse d/b/a Lagasse Apartment Rentals d/b/a Providence Mutual Insurance Company is an apartment rental company located in Waterbury, Connecticut ("Lagasse Apartment Rentals").  *Id.* at 13-14.  Defendants Paul Lagasse Jr. ("Lagasse Jr.") and Vincent Lagasse ("V. Lagasse") are agents of Lagasse Apartment Rentals (together with Lagasse Jr. and V. Lagasse, the "Lagasse defendants").  *Id.* at 14.  Each defendant is being sued in his or her individual capacity.  *Id.*

Gyadu rented an apartment from the Lagasse defendants at $485 per month under a lease agreement, under which Gyadu paid a two-month deposit of $970.  *Id.* at 10.  Gyadu "had the apartment for almost ten consecutive years" under the lease agreement.  *Id.*  At some point, the Lagasse defendants "wanted the apartment back but did not have anything against [Gyadu] under the [l]ease [a]greement upon which they could legally evict [him] . . . ."  *Id.*  So the Lagasse

---

[1] With respect to those state court records referenced in this ruling from Gyadu's underlying state court action, I hereby take judicial notice of these court records.  *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003).  Defendant T. Bainer filed these public records as attachments to Bainer's motion to dismiss.  *See* ECF Nos. 48-2 to 48-11.

defendants "concocted a story that [Gyadu] rented an apartment from them on a verbal agreement of month to month basis." *Id*. The Lagasse defendants then "stated dishonestly that they were not honoring that month to month rental agreement any further" and subsequently brought an eviction action on June 6, 2017 against Gyadu and Jacqueline Ward ("Ward"), who lived with Gyadu at the time. *Id.*; *see also* ECF No. 48-2 (state court complaint filed by Paul Lagasse and Vincent Lagasse on June 6, 2017, docket number WTH-CV-17-5001805-S, seeking to evict Gyadu and Ward for "lapse of time," and notice to quit premises as of May 31, 2017).

After the state court complaint was filed, Gyadu met with Paul Lagasse and Vincent Lagasse in the courtroom before a mediator where Gyadu "was lured into signing a document called a stipulation which [he] did not understand." ECF No. 42 at 10; *see also* ECF No. 48-3 (stipulation between Ben Gyadu and Paul and Vincent Lagasse that judgment for possession may enter in favor of Paul and Vincent Lagasse). The stipulated judgment included a final stay of execution through July 31, 2017 and required Gyadu to pay $485 to Paul and Vincent Lagasse on or before July 10, 2017. ECF No. 48-3 at 3.

Around this time, Gyadu "was confronted with life threatening health problems" and was not able to "move his belongings to relocate." ECF No. 42 at 10. As a result, from July 9 through 31, 2017, Gyadu filed several motions to stay execution of the stipulated judgment "with medical supporting documents from various doctors" regarding Gyadu's "extremely poor health", including a July 14, 2017 "heart surgery," which would made it difficult for him to move. *Id.*; ECF Nos. 48-4 to 48-8. The state court judge denied Gyadu's first such motion (styled as a motion for order) on July 25, 2017, ECF No. 48-4 at 9-10, and denied the remaining motions (styled variously as a motion to stay, motion for clarification, or motion for extension)

on August 1, 2017 between 10:04 and 10:24 AM.  *See* ECF No. 48-5 at 8; ECF No. 48-6 at 5;

ECF No. 48-7 at 5; ECF No. 48-8 at 5.

On August 1, 2017 at 10:41 AM—after the final stay of execution expired the day

prior—the Connecticut Superior Court recorded as filed a Summary Process Execution for

Possession (Eviction) by Paul and Vincent Lagasse.  ECF No. 48-9.  Bainer issued the Execution

on August 1, 2017 at 10:48 AM without any certification of service upon Gyadu from Paul and

Vincent Lagasse.  ECF No. 48-10; *see also* ECF No. 42 at 11-12; ECF No. 48-1 at 2.  On August

2, 2017, Gyadu filed another motion to stay; the state court judge denied that motion, stating

"[n]ot proper filing after execution has issued."  ECF No. 48-11 at 8.  Gyadu alleges that Bainer

issued the execution order while there were pending motions on the docket and did not check the

docket for any pending motions before doing so.  ECF No. 42 at 4.

Paul and Vincent Lagasse contacted Connecticut State Marshal Thomas Gahan to evict

Gyadu and Ward.  *Id.* at 18.  When Gahan arrived at Gyadu's residence, Gyadu "showed him

copies of pending motions that were supposed to be acted upon by the Court to resolve their

issues before any eviction . . . ."  *Id.*  Gahan then asked Gyadu "to go to the [c]ourthouse and ask

the Judge to act on the pending motions[,]" to which Gyadu replied that "it is not done that way

and he was the one to halt the eviction."  *Id.*  Gahan then "told [Gyadu] that he was going to

make a call to . . . Mr. Paul Lagasse Jr.[,]" but Lagasse Jr. did not answer the call.  *Id.*  Gyadu

told Gahan again "that the eviction was [illegal] and [unlawful] and must be halted."  *Id.* at 19.

Gahan then asked Gyadu to contact Lagasse Jr., so Gyadu went to Lagasse Jr.'s office and found

him there.  *Id.*  Gyadu gave him copies of the "pending motions that were supposed to be acted

upon and their issues resolved before any eviction . . . ."  *Id.*  Lagasse Jr. "collected these copies

of pending motions and without looking at them let alone reading them, slammed them on the

ground before . . . Gyadu." *Id.* Gyadu then collected the papers and left "to avoid[] any possible resultant violence" and, at that time, "was having extreme health problems [including] that he could not stand on his feet for any length of time, could not have his balance to walk, was feeling dizzy and coughing all the time and consequently had to be operated on at the Mass. General Hospital in Boston, Massachusetts." *Id.*

Construing Gyadu's pro se complaint liberally, I find that he asserts the following claims for relief based on the alleged facts set forth above: (1) violations of his Fourteenth Amendment rights to due process and equal protection under 42 U.S.C. § 1983 as to all defendants, ECF No. 42 at 3-7, 18-19[2]; (2) conspiracy and collaboration between Bainer and Lagasse Jr. and V. Lagasse in violation of 42 U.S.C. § 1985(3), ECF No. 42 at 3, 5-6; (3) Bainer's aiding and abetting the Lagasse defendants in achieving an unlawful eviction, *id.* at 7-8; (4) breach of contract (lease agreement) as to the Lagasse defendants, *id.* at 15-16; and (5) violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA") as to the Lagasse defendants, *id.*

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1) Motion to Dismiss

A case may be properly dismissed pursuant to Rule 12(b)(1) when a court "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When deciding whether to grant a 12(b)(1) motion to dismiss, a court "must accept all factual allegations in the complaint as true and draw inferences from those allegations

---

[2] Gyadu's complaint also invokes the Fifth Amendment, but the Fifth Amendment's Due Process Clause and equal protection principles apply to federal, not state, actors. *See Skelly v. I.N.S.*, 168 F.3d 88, 91 (2d Cir. 1999) (noting "that there is a well-established equal protection component to the Fifth Amendment Due Process Clause applicable to the federal government."); *Mazzone v. Town of Southampton*, 283 F. Supp. 3d 38, 47 (E.D.N.Y. 2017) (noting that "the Due Process Clause of the Fifth Amendment only applies to actions by the Federal Government."). Because the complaint makes no mention of federal officials, any Fifth Amendment claims are dismissed.

in the light most favorable to [the pleader]."[3] *McGinty v. State*, 193 F.3d 64, 68 (2d Cir. 1999). A court may also refer to evidence outside the pleadings, and the claimant has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *See Makarova*, 201 F.3d at 113 (citations omitted).

### B.    Rule 12(b)(6) Motion to Dismiss

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and "must draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014). "Even after *Twombly*, though, [courts] remain

---

[3] The Second Circuit has not always been clear on this point, stating, at times, that on a Rule 12(b)(1) motion, the court should *not* draw inferences in the pleader's favor. *Compare McGinty*, 193 F.3d at 68 (in reviewing dismissal under Rule 12(b)(1), "we must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to plaintiffs.") *with Shipping Fin. Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) ("[W]hen the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.") and *J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004) ("On appeal of the district court's order on the motion to dismiss [under Rule 12(b)(1)], we must accept as true all material factual allegations in the complaint, but we are not to draw inferences from the complaint favorable to plaintiffs."). In *Morrson v. Nat'l Australia Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008), the Second Circuit suggested that these different statements were reconcilable, although it did not explain how: "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff [on a Rule 12(b)(1) motion], "but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* at 170. In any event, in this ruling, I take as true the allegations in Gyadu's operative complaint and draw all reasonable inferences in his favor.

obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

The court may consider any documents attached to, incorporated in by reference, or otherwise heavily relied upon in the complaint when deciding the motion. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal citations and quotation marks omitted)). As noted, *see supra* note 1, courts may also take judicial notice of certain public records, including state court records. *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003).

## III.   DISCUSSION

Bainer, Gahan, and the Lagasse defendants move to dismiss: (1) Gyadu's complaint in its entirety for lack of subject matter jurisdiction based on the *Rooker-Feldman* doctrine; and (2) Gyadu's section 1983 equal protection and due process claims and claims under 42 U.S.C. § 1985(3) fail to state a cognizable legal claim. ECF Nos. 45, 47, 50 (incorporating ECF Nos. 27, 27-1, 35, 35-1); ECF No. 48-1. In addition, Bainer argues that her actions are protected by absolute quasi-judicial immunity and, separately, qualified immunity. ECF No. 48-1 at 6-10. Lastly, Gahan and the Lagasse defendants argue that, to the extent Gyadu's complaint could be construed to assert any other state or federal claim, those claims should be dismissed for failure to meet Rule 8's pleading standards. ECF Nos. 45, 47, 50. In response, Gyadu argues that: (1) *Rooker-Feldman* does not apply because he is not seeking review of the state court's judgment but, rather, alleges that his due process and equal protection rights were violated when Bainer

issued the Execution Order before Gyadu received notice that his motions to stay execution were denied, thus depriving him of any appellate or other post-judgment rights; (2) his complaint adequately states a claim under 42 U.S.C. § 1983 for violation of his equal protection and due process rights; (3) Bainer's actions were "ministerial" in nature and therefore not protected by absolute quasi-judicial immunity; (4) Bainer is not protected by qualified immunity because the complaint pleads violations by an official of constitutional rights that were clearly established at the time of the alleged conduct; and (5) his complaint satisfies Rule 8's pleading standards.  ECF Nos. 69, 70.  For the reasons discussed below, I grant the defendants' motions to dismiss for lack of subject matter jurisdiction under *Rooker-Feldman*; alternatively, if the Court had jurisdiction, I would dismiss the complaint under Rule 12(b)(6), because Bainer is protected by absolute quasi-judicial immunity and the federal claims against the other defendants fail as a matter of law.  I address each issue in turn.

### A.    The *Rooker-Feldman* Doctrine Deprives this Court of Subject Matter Jurisdiction.

Bainer, Gahan, and the Lagasse defendants argue that Gyadu's complaint fails for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine.  Under *Rooker-Feldman*, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."  *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).  For *Rooker-Feldman* to apply, four requirements must be met: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain[] of injuries caused by [a] state-court judgment"; (3) "the plaintiff must invit[e] district court review and rejection of [that] judgment"; and (4) "the state-court judgment must have been rendered before the district court

proceedings commenced . . . ." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (internal quotation marks and footnote omitted) (brackets in original).

The parties agree that the first prong is met because Gyadu lost in the state court eviction action. The fourth prong is met because this federal action was filed on July 19, 2019, ECF No. 1—more than two years after the judgment in the state court action entered (on June 28, 2017, *see* ECF No. 48-3 at 2). To the extent Gyadu argues that no final judgment issued in his state court action, that argument lacks merit. *See id.*; ECF No. 70 at 8-11. Gyadu argues that the state court action was terminated "mid-stream" by the defendants' alleged conduct in issuing and effecting the eviction order. ECF No. 70 at 9. In addition, Gyadu argues that "the judgment cannot be said to be final if there was an appeal process that [Gyadu] could pursue to overturn or modify the judgment . . .", and he was deprived of the opportunity to pursue his appeal rights by the defendants' alleged conduct. *Id.* at 9-10. But Gyadu's argument ignores that his right to appeal the judgment by stipulation expired five days after its June 28, 2017 entry—on July 3, 2017. *See* Conn. Gen. Stat. § 47a-26g ("Appeal shall be allowed from any judgment rendered in any summary process action in the manner provided in section[] 47a-35 . . . ."); *id.* § 47a-35 ("Execution shall be stayed for five days from the date judgment has been rendered . . . . No appeal shall be taken except within such five-day period."). It is also clear from the stipulated judgment and statutory scheme that Gyadu had sufficient notice of the judgment against him and the requirement that he quit the premises by July 31, 2017. The judgment states plainly that the stay of execution, which provided Gyadu more than a month to quit the premises, was final. ECF No. 48-3 at 3.

As to the second and third prongs, they are met because the constitutional injuries Gyadu complains of were caused by the state court judgment, and this Court's evaluation of his

allegations would require a review and rejection of the state court's judgment. In *Hoblock v. Albany County Bd. of Elections*, the Second Circuit analyzed the *Rooker-Feldman* doctrine in light of the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), explaining "that in some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments. The challenge is to identify such suits." 422 F.3d 77, 88 (2005). To guide this inquiry, the *Hoblock* Court set forth the following formula:

> [A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it. Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear.

*Id*. Later, the Second Circuit confirmed that

> [w]hat *Exxon Mobil* and *Hoblock* [] make clear is that the applicability of the *Rooker-Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court.

*McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007) (emphasis in original). Courts in the Second Circuit have found such a causal relationship to exist where, for example, the federal court plaintiffs complained of injuries caused by an election board (a third party) when the board refused to count certain ballots in order to comply with a state-court judgment, *Hoblock*, 422 F.3d at 88-89, and where a federal court plaintiff alleged due process and other claims stemming from his loss in state housing court (and subsequent eviction) against multiple third-party defendants (including the housing court judge and others who "took actions to effectuate the judgment" against the plaintiff), *Bush v. Danziger*, No. 06 CIV. 5529 (PKC), 2006 WL 3019572, at *4-5 (S.D.N.Y. Oct. 23, 2006).

Defendants argue that evaluating Gyadu's due process and equal protection claims would require the court "to determine that Defendant Bainer improperly issued the Execution and, thus, that Plaintiff was wrongly evicted." ECF No. 48-1 at 6. In response, Gyadu appears to argue that he is not challenging the state court judgment itself, but rather the alleged fraudulent conduct engaged in by the defendants, which allegedly deprived him of what he claims was the required notice and, thus, his constitutional right to challenge the state court judgment. ECF No. 69 at 5-10; ECF No. 70 at 1-13. In addition, Gyadu asserts that he does not seek to alter the state court's judgment as to his eviction; the only relief he seeks in this action is damages. ECF No. 42 at 20 (complaint seeking relief only in the form of $5,000,000 in punitive and compensatory damages against defendants); *see also* ECF No. 69 at 6; ECF No. 70 at 12.

Here, the injury Gyadu complains of was caused by the state court judgment. While the complaint is lengthy, repetitive, and difficult to read at times, it makes clear that Gyadu's core complaint is that the Lagasse defendants conspired with Bainer to terminate the state court proceeding and execute the eviction quickly, thus depriving Gyadu of notice of the eviction prior to execution and stripping him of appellate and other post-judgment rights he claims he could have exercised had he received the allegedly required notice. But Bainer, Gahan, and the Lagasse defendants were all taking actions to effectuate the state court judgment, entered pursuant to a stipulation signed by the parties before a court mediator. As a result, although Gyadu asserts that he complains of an injury caused by individuals, in reality he is complaining of injuries caused by the state-court judgment, i.e., the "unimaginable shock, trauma[,] and distress, not to mention . . . heavy damages and losses to [his] belongings" when "the eviction team" removed his property from the apartment. ECF No. 42 at 19-20. Further, to review the propriety of the issuance of the execution, or of the defendants' actions taken to effectuate it,

would require me to review the merits of the state court judgment and (if I were to find in favor of Gyadu) to reject that judgment. That is so because, once any stay of execution of a summary process judgment expires, the landlord is entitled to obtain an execution without further ado. Conn. Gen. Stat. § 47a-42(a) (providing that "upon expiration of any stay of execution, the plaintiff may obtain an execution upon such summary process judgment, and the defendant or other occupant bound by the judgment . . . and the possessions and personal effects of such defendant . . . may be removed by a state marshal . . . ."). Because the judgment creates an entitlement to the execution, Gyadu's challenge to the execution amounts to a challenge to the judgment, and is precisely the kind of claim that is barred by *Rooker-Feldman* and over which the District Court does not have subject matter jurisdiction. Thus, I grant the defendants' motions to dismiss Gyadu's complaint in its entirety for lack of subject matter jurisdiction under *Rooker-Feldman*.

The fact that Gyadu seeks only damages based on an alleged constitutional injury that was not presented to, or litigated before, the state court does not change this outcome. *See Powell v. Ocwen Loan Servicing, LLC*, 840 Fed. Appx. 610 (2d Cir. 2020) (affirming district court's finding that *Rooker-Feldman* deprived it of subject matter jurisdiction despite the fact that the plaintiffs sought damages and "[sought] relief from problems they did not bring to the state court's attention . . ."); *Hoblock*, 422 F.3d at 86 (rejecting plaintiffs' argument "that *Rooker–Feldman* does not apply because the [plaintiffs] raise a Fourteenth Amendment argument [in District Court] and thus 'are not seeking review of the state court's decision[,] which was strictly limited to state law . . . .'" (alterations in original)). While it is true that, in some circumstances, a "district court can determine damages liability without reviewing the propriety of the state court judgment[,]" *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F.

App'x 20, 21 (2d Cir. 2016), Gyadu's complaint does not present such a circumstance. As
discussed above, Gyadu's claim for damages would require a review of the propriety of Bainer's
issuance of the execution following expiration of the stay, as well as the state court judge's
rejection of Gyadu's motion to stay execution filed after issuance of the execution; that motion
raised issues similar to those Gyadu now brings before this Court, including due process and
equal protection claims and the deprivation of his right to appeal. To be sure, Gyadu appears to
suggest that his medical conditions were so severe during the hearing at which he agreed to sign
the stipulated judgment that he did not understand what he was doing or what the stipulated
judgment meant. But again, to evaluate the propriety of the state court judge's acceptance of the
stipulated judgment and, by implication, that judge's determination that Gyadu was competent to
enter into such an agreement, would run afoul of the *Rooker-Feldman* doctrine.

Thus, defendants' motions to dismiss Gyadu's complaint for lack of subject matter
jurisdiction under the *Rooker-Feldman* doctrine is granted and Gyadu's complaint is dismissed
on that basis.

**B.     Bainer is Protected by Absolute Quasi-Judicial Immunity.**

Even if *Rooker-Feldman* did not deprive this Court of subject matter jurisdiction, Bainer
would be protected from Gyadu's claims by absolute quasi-judicial immunity. Bainer argues
that Gyadu's complaint must be dismissed because the only allegations against her "relate to
actions taken in her capacity as a Connecticut Judicial Branch employee" and are therefore
protected by absolute quasi-judicial immunity. ECF No. 48-1 at 6. Gyadu responds by arguing
that Bainer's actions were ministerial, rather than judicial in nature, and thus not protected by

absolute quasi-judicial immunity.  ECF No. 69 at 10-12.  I agree with Bainer, and so if the Court had jurisdiction, I would dismiss Gyadu's claims against Bainer under Rule 12(b)(6).[4]

As a housing court clerk, Bainer is a judicial officer and is entitled to immunity for actions taken in performance of a judicial function. *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (holding that absolute judicial immunity extended to court clerk for duties related to judge's denial of plaintiff's motions and managing the court calendar).  "Clerks, like judges, are immune from damage suits for performance of tasks that are an integral part of the judicial process." *Chance v. Connecticut Superior Court*, 2004 WL 2958469 *2 (D. Conn. Dec. 13, 2004) (internal quotation marks and alteration omitted).  Gyadu alleges that Bainer conspired with the Lagasse defendants to issue an execution for eviction without notice to Gyadu.  In so doing, Gyadu alleges that Bainer neglected the duties required of a clerk before issuing such an execution for eviction and thus violated his due process and equal protection rights under the Fourteenth Amendment, entitling him to damages under 42 U.S.C. § 1983.  ECF No. 42 at 5-7, 18-19.  But a housing clerk's "responsibilities in processing execution of judgment . . . in summary process cases are [] discretionary functions integral to the judicial process." *Cayo v. O'Garro*, No. FSTCV146020974S, 2014 WL 4746616, at *8 (Conn. Super. Ct. Aug. 11, 2014).  As a result, Gyadu's claims against Bainer based on the alleged circumstances regarding the issuance of the execution permitting the state marshal to evict Gyadu are barred under the doctrine of absolute quasi-judicial immunity.  *See id.* (finding that plaintiff's claims against a judicial clerk and housing court mediator were barred by the defense of quasi-judicial immunity); *see also Charles v. O'Garro*, No. 3:18-CV-0729 (SRU), 2018 WL 2926307, at *3 (D. Conn. June 11, 2018) (finding that plaintiff's claims alleging wrongdoing by a Connecticut

---

[4] I need not address Bainer's separate qualified immunity argument.

housing court clerk in the handling of plaintiff's state foreclosure action were barred by quasi-judicial immunity and collecting cases reaching the same conclusion for court clerk actions including court calendar management, docket control, filing exhibits, refusing to docket motions or schedule court hearings, and entering an erroneously-issued warrant); *Sims v. Pitt*, No. HHDCV165042353S, 2017 WL 5559355, at *1 (Conn. Super. Ct. Oct. 11, 2017) (finding that plaintiff's claims against an assistant clerk and court operations assistant "based on conduct which occurred in their official capacities on behalf of the [Connecticut] Judicial Branch in the underlying [summary process eviction] action . . . [were barred by] . . . the doctrine of [quasi-]judicial immunity." (internal quotation marks, citation, and footnote omitted)).  Thus, even if Gyadu's claims were not barred by *Rooker-Feldman*, I would still dismiss Gyadu's claims against Bainer.

## C.    The Complaint Fails to State a Claim Under 42 U.S.C. §§ 1983 and 1985.

Even if *Rooker-Feldman* did not apply, Gyadu's claims against Gahan and the Lagasse defendants would also fail under Rule 12(b)(6).[5]  As an initial matter, any claim Gyadu brings under section 1985 fails because he does not allege racial or invidious discriminatory animus.

> To state a cause of action under § 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.  A conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct.  Furthermore, the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.

---

[5] While Gahan does not raise this issue, he may be protected from suit by the doctrine of state sovereign immunity for actions taken in his role as a Connecticut State Marshal.  *See, e.g.*, *Keyin Worth v. Christopher Picard et al.*, No. UWYCV185021726S, 2021 WL 1702320, at *2 (Conn. Super. Ct. Apr. 5, 2021) (dismissing claims against Connecticut State Marshals, including claim that the marshals failed to provide the notice required under Conn. Gen. Stat. 47a-42, under the doctrine of state sovereign immunity); *Mason v. Barbieri*, No. CV085011263S, 2010 WL 1888711, at *5 (Conn. Super. Ct. Apr. 14, 2010) (dismissing plaintiff's claims against state marshal as barred by state sovereign immunity).

*Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (internal citations and quotation marks omitted). Nowhere in Gyadu's complaint does he suggest, argue, or assert that any of the defendants acted on the basis of racial, class-based, or other discriminatory animus. As a result, the complaint fails to state a claim under 42 U.S.C. § 1985(3).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) "some person has deprived him of a federal right" and (2) "the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Gyadu alleges that Gahan acted under color of state law, and Gahan does not contest this allegation. As a result, the second prong of a section 1983 claim is satisfied as to Gahan. While Gyadu does not allege expressly (and the Lagasse defendants do not contest) that any of the Lagasse defendants—all of whom are private, rather than, government, actors—acted under color of state law, a section 1983 plaintiff need not "recite the words, 'under color of state law[,]'" to state a claim. 6 James Buchwalter et al., Fed. Proc., L. Ed. § 11:325 (2021). If a defendant in a section 1983 action is a private party, the plaintiff "bears the burden of proving that the private party's acts constitute state action." *Id*. For the purpose of this motion, I assume that Gyadu's allegations as to the Lagasse defendants meet the requirements set forth in *Lugar v. Edmondson Oil Co., Inc.*, such that their "conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State". 457 U.S. 922, 937 (1982); *see also Dahlberg v. Becker*, 748 F.2d 85, 88-92 (2d Cir. 1984) (analyzing *Lugar*'s "fair attribution" test and discussing a Ninth Circuit case, *Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983), in which the *Howerton* court determined that the plaintiff had stated a cause of action under section 1983 against defendant landlords for their conduct in coordination with state police in evicting the plaintiff pursuant to an allegedly unlawful eviction notice). I address Gyadu's two Section 1983 claims below.

16

1.     *Equal Protection.*

Gahan and the Lagasse defendants move to dismiss Gyadu's equal protection claim for failure to allege that he was treated differently than other similarly situated individuals, either on the basis of a protected class or as a class-of-one.  Gyadu responds by arguing that his

> allegation throughout the Complaint has been that the Defendant's act of failing to abide by the usual requirement of the rules of litigation such as certifying that a copy of the Defendant's filing of the application for Execution Order for the sole purpose of terminating the litigation and thus closing the Pleadings and thereby making it FUTILE for Plaintiff to file any Objection he might have before [Gyadu] knew anything about the filing of the application for the Execution Order and attempted to file any objection he may have which at the juncture would torpedo their ill-conceived plan of evicting the Plaintiff by any means, fair or foul, to achieve their goal constitutes a selective treatment and thus a DEPR[I]VATION of EQUAL PROTECTION OF LAWS.

ECF No. 70 at 17-18.  For the reasons stated below, I agree with the defendants that the complaint does not state an equal protection claim.

The Fourteenth Amendment's Equal Protection Clause does not mandate identical treatment for each individual but "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To state an equal protection claim, a plaintiff must allege facts showing that: (1) he or she was treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks omitted). A plaintiff must demonstrate evidence of "purposeful discrimination . . . directed at an identifiable or suspect class."  *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted).

Even when a suspect classification is not at issue, the Equal Protection Clause still requires that individuals be treated the same as "similarly situated individuals." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012). Thus, a plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

> To establish a "class of one" claim, a plaintiff must show that: (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 198 (2019). In the Second Circuit, class-of-one plaintiffs "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). The high degree of similarity between the plaintiff and comparators warrants "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *See Witt v. Village of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 639 F. App'x 44 (2d Cir. 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

As the defendants point out, Gyadu has not alleged membership in a suspect class, nor has he alleged any facts suggesting that the defendants treated him differently than other similarly-situated tenants or comparators. *See King v. New York State Div. of Parole*, 260 F. App'x 375, 379-80 (2d Cir. 2008) (affirming dismissal of equal protection class of one claim where petitioner "failed to identify a single individual with whom he can be compared for Equal

Protection purposes").  Gyadu's complaint, even liberally construed, fails to draw comparisons

to any other tenants, similarly situated or otherwise, let alone set forth facts alleging the

"extremely high degree of similarity" necessary to allege a class-of-one equal protection claim.

Gyadu merely alleges that the defendants' failure to provide him notice of an execution after

judgment had entered and the stay had expired violated the "usual requirement of the rules of

litigation."  ECF No. 70 at 17.  This is insufficient.  *See Clubside*, 468 F.3d at 159; *see also NRP*

*Holdings LLC*, 916 F.3d at 198-99 (affirming district court's dismissal of plaintiff developer's

class-of-one equal protection claim because the complaint did not allege sufficient detail about

the "other developers" and their projects as comparators and thus failed to meet the degree of

similarity required for such claims); *Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 544-45

(S.D.N.Y. 2014) ("Whether construed as a selective-enforcement or class-of-one claim, I dismiss

Plaintiff's equal protection claim because he has failed to allege that he was treated differently

from similarly situated individuals.  Although Plaintiff asserts that he was 'selectively

prosecut[ed] . . . for wetland and other criminal offenses [when the Town] refus[ed] to enforce

the same laws . . . against the Neighbor Defendants,' that the 'Town did not engage in the

described wrongful conduct in regard to other similarly-situated citizens,' and that the conduct

was '[a]rbitrary, [c]apricious, irrational, evil, fraud and in bad faith,' Plaintiff has provided no

facts from which it may be plausibly inferred that these Neighbor Defendants or any other

citizens were similarly situated.  He provides no information about their properties, situations or

conduct that would support the conclusory statement that they were similarly (let alone

extremely similarly) situated." (internal citations omitted) (alterations in original)).  Thus, even if

the Court had jurisdiction, the Section 1983 equal protection claim would fail as a matter of law.

19

2.      *Due Process*

The defendants argue that Gyadu's section 1983 claim alleging a deprivation of due process must be dismissed because, to the extent Connecticut law requires notice of a summary process execution, such notice was satisfied by the pre-deprivation hearings and processes that Gyadu concedes he participated in, as well as by the notice provided in-person by State Marshal Gahan when he executed the eviction order.  ECF No. 48-1 at 12-13.  Gyadu does not allege that his due process rights were violated during the state court proceedings and asserts that he does not contest the state court judgment of eviction.  Rather, Gyadu argues that the defendants' failure to provide him notice—and, specifically, the Lagasse defendants' failure to provide Bainer a certificate of service of the summary process execution application and Bainer's subsequent issuance of the execution order without such a certificate of notice—*after* the stay of execution expired, constitutes a deprivation of due process.

While Gyadu does not specify whether he asserts a claim of procedural or substantive due process, the allegations make clear that his complaint centers on the alleged failure to provide him the required notice before evicting him, which allegedly deprived him of the ability to further challenge the state court judgment.  ECF No. 42 at 3-4; *see also* ECF No. 69 at 6 (Gyadu asserting that "The Complaint WAS NOT about the actions of the judge who entered the judgment *nor was it about the judgment.*" (emphasis added)).  As a result, I find that Gyadu asserts a claim for deprivation of procedural due process.  *See Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 330 (E.D.N.Y. 2012) ("Put another way, where a plaintiff alleges violations of procedural due process 'the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is

20

unconstitutional is the deprivation of such an interest *without due process of law*.'" (quoting

*Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original))).

Analysis of a claim of a violation of procedural due process "proceeds in two steps: We

first ask whether there exists a liberty or property interest of which a person has been deprived,

and if so we ask whether the procedures followed by the State were constitutionally sufficient."

*Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam).  As to the first step, the defendants

do not contest that Gyadu had a property interest as a tenant (even one facing a judgment of

eviction and the expiration of the final stay of execution)—their arguments focus on the second

step of the analysis.  They argue that Gyadu had no distinct right to notice of the execution, apart

from the notice associated with his pre-deprivation right to participate in the eviction litigation,

and cite the Connecticut statute governing the process for evicting a tenant under an execution

after the expiration of a final stay.[6]  Gyadu's argument to the contrary regarding allegedly

required notice fails because, first, he does not assert any legal infirmity with the process he

---

[6] The statute does require notice by the state marshal before a tenant can be evicted pursuant to a valid judgment, even after a stay of execution has expired, but Gyadu does not allege that Marshal Gahan failed to provide this particular notice.  The statute provides: "[T]he state marshal charged with executing upon any such judgment of eviction *shall* give the chief executive officer of the town *twenty-four hours notice* of the eviction, stating the date, time and location of such eviction as well as a general description, if known, of the types and amount of property to be removed from the premises and delivered to the designated place of storage. *Before giving such notice to the chief executive officer of the town, the state marshal shall use reasonable efforts to locate and notify the defendant of the date and time such eviction is to take place* and of the possibility of a sale pursuant to subsection (c) of this section. *Such notice shall include service upon each defendant and upon any other person in occupancy, either personally or at the premises, of a true copy of the summary process execution.* Such execution shall be on a form prescribed by the Judicial Department, shall be in clear and simple language and in readable format, and shall contain, in addition to other notices given to the defendant in the execution, a conspicuous notice, in large boldface type, that a person who claims to have a right to continue to occupy the premises should immediately contact an attorney, and clear instructions as to how and where the defendant may reclaim any possessions and personal effects removed and stored pursuant to this section, including a telephone number that may be called to arrange release of such possessions and personal effects." Conn. Gen. Stat. § 47a-42(a), (b) (emphasis added).  Thus, Connecticut law required Marshal Gahan to "use reasonable efforts" to give notice of the date and time of eviction to Gyadu more than 24 hours in advance of such eviction.  It is not clear from the complaint and the defendants' briefs whether Gahan complied with this notice requirement but, even construing Gyadu's complaint liberally, he makes no allegation that Gahan failed to comply with this statute.  Even if Gyadu did wish to bring such a claim against Gahan, however, he would likely need to overcome a sovereign immunity defense, as noted above.  *See supra* note 5.

received in the state court and, second, he does not identify any statute or caselaw that supports his assertion that an application for summary process execution requires a certificate of service or other pre-issuance notice (apart from the notice by the state marshal discussed in footnote 6, *supra*).  Nor does he cite any authority for his assertions that he was deprived of his right to appeal—a right that expired in his eviction action weeks before the execution issued.[7]  As a result, even if the Court had jurisdiction, Gyadu's procedural due process claim would fail as a matter of law.[8]

## IV.   CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss (ECF Nos. 45, 47, 48, 50) are hereby GRANTED.  The Clerk is directed to close this case.


IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
             May 24, 2021

---

[7] Judgment entered in the eviction action on June 28, 2017.  ECF No. 48-3.  Under the Connecticut summary process statutes, Gyadu had five days – until July 3, 2017 – to appeal the judgment.  Conn. Gen. Stat. § 47a-35.  The execution did not issue until August 1, 2017.

[8] Even if *Rooker-Feldman* did not apply, I would dismiss the federal claims for the reasons set forth in the text and would decline to exercise jurisdiction over the state law claims under 28 U.S.C. § 1367, dismissing them without prejudice.